# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | **ORDER GRANTING GOVERNMENT'S FOURTH AND SIXTH MOTIONS IN LIMINE AND DEFERRING RULING ON GOVERNMENT'S FIFTH MOTION IN LIMINE** |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| Roger Ricky Counts, | ) | Case No. 3:18-cr-00141 |
| | ) | |
| Defendant. | ) | |

Trial in the above-captioned case is scheduled to commence on February 10, 2020. Now before the Court are the Government's fourth, fifth, and sixth motions in limine filed on January 31, 2020. Doc. Nos. 80, 81, and 82. The Government's motions are more extensively described and argued in its trial brief filed on January 24, 2020. Doc. No. 58. An Indictment charges Defendant Roger Ricky Counts with (1) Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C. §§ 2241(c), 1153; and (2) Failure to Report Child Abuse, in violation of 18 U.S.C. § 1169. Doc. No. 1. In particular, the Government alleges that Counts sexually abused M.D., a then eight-year-old boy, while he was in foster care in Counts' home.

The Government's fourth motion in limine requests the admission of statements that M.D. made to his brother and aunt as non-hearsay statements offered for their effect on the listeners. Doc. No. 80. The Government's fifth motion in limine seeks to admit prior consistent statements by M.D. and by D.D., another foster child in Counts' care, under Federal Rules of Evidence 807 and 801(d)(1)(B)(ii). Doc. No. 81. The Government's sixth motion in limine requests accommodations for the child witnesses, namely use of an age-appropriate oath and permission to hold stress relief balls while testifying. Doc. No. 82. Counts has not filed a response to any of the motions in limine.

## I. ADMISSIBILITY OF M.D.'S STATEMENTS TO HIS BROTHER AND AUNT

In its fourth motion in limine, the Government seeks the admission of statements that M.D. made to his older brother, M.B., and his aunt, Sharilyn Bercier. The Government anticipates M.B. to testify that (1) M.D. disclosed to M.B. that Counts abused M.D.; (2) as a result of the disclosure, M.B. notified Bercier; and (3) M.B. witnessed M.D. make a disclosure about the alleged abuse to Bercier. The Government does not plan to elicit specific details about what M.D. disclosed. The Government expects Bercier's testimony to establish that (1) M.B. notified her that M.D. had disclosed incidents of abuse to M.B.; (2) M.D. then disclosed the alleged abuse to Bercier; and (3) as a result of the disclosure, Bercier alerted Turtle Mountain Child Welfare ("TMCW").

The Government intends to present this testimony not for the truth of the matter asserted but rather to explain the background of the investigation. As such, the Government argues that the statements are admissible as non-hearsay statements. See Fed. R. Evid. 801(c)(2) (defining hearsay as an out-of-court statement offered into evidence "to prove the truth of the matter asserted in the statement").

Eighth Circuit precedent makes clear that "[p]reliminary information concerning the origin of an investigation, admitted only for that purpose, is not hearsay." United States v. Running Horse, 175 F.3d 635, 638 (8th Cir. 1999) (upholding admission of statements by band teacher to whom child first disclosed sexual abuse and social worker to whom case was referred as background information for jury to understand origin of investigation); see also United States v. Wright, 739 F.3d 1160, 1170 (8th Cir. 2014) (alteration in original) (citations omitted) ("[A] statement offered to show its effect on the listener is not hearsay."); United States v. Londondio, 420 F.3d 777, 788-89 (8th Cir. 2005) (finding no abuse of discretion where "the District Court permitted testimony about out-of-court statements that were offered to show the reason for police

action, rather than to prove the truth of the matter asserted"). The Court therefore orders that generalized testimony about the disclosures will be admissible for the limited purpose of explaining the origin of the law enforcement investigation into Counts.[1] The Court will provide a limiting instruction to the jury at the appropriate time if requested.

## II. ADMISSIBILITY OF M.D. AND D.D.'S PRIOR CONSISTENT STATEMENTS

In its fifth motion in limine, the Government requests a ruling that the prior statements of M.D. and D.D. will be admissible under Federal Rules of Evidence 807 and/or 801(d)(1)(B)(ii). The Government anticipates that two situations may arise in which it would seek to admit the prior statements: (1) if M.D. or D.D. become anxious or intimidated to the extent that either child is unable or unwilling to testify, and (2) if Counts attacks their credibility and memory on cross-examination. Specifically, if either situation arises, the Government intends to present video recordings of M.D. and D.D.'s forensic interviews, notes written by M.D. and D.D., and evidence of the children's statements to Raven Grandbois and Helen Keplin, employees at the Little Shell Youth Shelter. The Court will defer ruling on the admissibility of the prior statements until such time that either situation arises.

### A. Rule 807

The Court is satisfied that the prior statements would be admissible under Rule 807, the residual exception to the hearsay rule. Rule 807 states:

**(a) In General.** Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

---

[1] Though the issue was not raised, the Court also notes that the admission of these non-hearsay statements does not present a Confrontation Clause problem because the Clause only bars the use of testimonial statements offered for the truth of the matter asserted. See Wright, 739 F.3d at 1170–71.

3

> **(1)** the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> **(2)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.
>
> **(b) Notice.** The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name—so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

Fed. R. Evid. 807.

The Eighth Circuit has held that "although 'hearsay testimony should only be admitted under Rule 807 in exceptional circumstances[,] . . . such exceptional circumstances generally exist when a child victim of sexual abuse is unable or unwilling to testify to a material issue regarding the abuse.'" United States v. White Bull, 646 F.3d 1082, 1094 (8th Cir. 2011) (alterations in original) (quoting United States v. W.B., 452 F.3d 1002, 1006 (8th Cir. 2006)). Accordingly, in cases where a child victim's testimony is "inconsistent" or "unclear," United States v. Peneaux, 432 F.3d 882, 893 (8th Cir. 2005), or where the child is "unable or unwilling to recall specific details regarding the abuse during [the child's] in-court testimony," W.B., 452 F.3d at 1006, the child's prior statements have been admitted under Rule 807.

A specific analysis of the Rule 807 requirements as they pertain to the evidence in this case is still necessary, however. Taking the requirements in order, the Court first finds that the statements are supported by sufficient guarantees of trustworthiness. In determining whether prior statements of an alleged victim of child sexual abuse are sufficiently trustworthy to be admitted under Rule 807, courts in the Eighth Circuit consider a "wide range of factors," including "the training and experience of the interviewer; whether the child was interviewed using open-ended

4

questions; the age of the child and whether the child used age-appropriate language in discussing the abuse; the length of time between the incident of abuse and the making of the hearsay statement; and whether the child repeated the same facts consistently to adults." United States v. Thunder Horse, 370 F.3d 745, 748 (8th Cir. 2004) (citing United States v. N.B., 59 F.3d 771, 776 (8th Cir. 1995)). "No single factor is dispositive; we examine the factors to determine if there are sufficient positive signs of trustworthiness." Id.

These factors are all met here. The forensic interviews were conducted by an experienced interviewer. The forensic interviewer as well as Grandbois, Keplin, and M.D.'s teacher used open-ended questions, prompts, and instructions. The children's ages weigh in favor of trustworthiness; M.D. and D.D. were eight years old at the time of most of the statements, and M.D. was nine years old when he wrote a note to his teacher. See N.B., 59 F.3d at 777 (first alteration in original) (citation omitted) ("'[A] declarant's young age is a factor that may substantially lessen the degree of skepticism with which we view [his] motives,' and mitigates in favor of the trustworthiness and admissibility of [his] declarations."). The children used age-appropriate language, such as "middle part" to refer to the penis. The statements were made much closer in time to the alleged events than this trial. And lastly, M.D. and D.D. repeated the same general facts consistently to multiple adults with only limited variations. Each of the Thunder Horse factors thus demonstrate that M.D. and D.D.'s prior statements are sufficiently trustworthy to be admitted under Rule 807.

Turning to the probativeness requirement, if M.D. and/or D.D. become unable or unwilling to testify, or either child is unable to provide clear testimony as to specific details, their prior statements will be the most probative evidence available regarding the alleged abuse. See Peneaux, 432 F.3d 882 at 893 (holding that a child's prior statements were properly admitted as they were "more probative than [the child's] hesitant trial testimony"); White Bull, 646 F.3d at 1094–95

(upholding admission of forensic interviewer's testimony as the most probative evidence available of the dates of the alleged abuse where the child victim was unable to offer clear testimony about the specific dates); W.B., 452 F.3d at 1006 (upholding admission where child could not recall certain specific details about the alleged abuse). Lastly, the Government has complied with the notice requirements of Rule 807.

Despite the Court's finding that the requirements of Rule 807 are met, the Court ultimately defers ruling because it is unclear at this time whether the demands of the Confrontation Clause will be satisfied. It is well-established that if a witness testifies and is subject to cross-examination at trial, the requirements of Crawford v. Washington are satisfied, and the admission of the witness's out-of-court statements does not run afoul of the Confrontation Clause. United States v. DeCoteau, No. 4:08-CR-037, 2010 WL 148373, at *5 (D.N.D. Jan. 13, 2010); see also Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). The key question under the Confrontation Clause is whether "the trial provide[s] an opportunity for effective cross-examination." N.B., 59 F.3d at 775. The defendant need only be given "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." United States v. Owens, 484 U.S. 554, 559 (1988).

It is premature at this point to determine whether the opportunity for effective cross-examination will exist. If an issue arises at trial with either child witness's unwillingness or inability to testify, the Court will then have the necessary information before it to analyze whether the Confrontation Clause's demands have been satisfied.

## B. Rule 801(d)(1)(B)(ii)

The Government also seeks admission of M.D. and D.D's prior statements under Rule 801(d)(1)(B)(ii). That rule provides that a prior out-of-court statement is not hearsay where "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is consistent with the declarant's testimony and . . . offered . . . to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B)(ii). Before Rule 801(d)(1)(B) was amended in 2014, only prior consistent statements offered to rebut charges of recent fabrication or improper motive were substantively admissible. Fed. R. Evid. 801(d)(1)(B), 2014 Advisory Committee Notes. However, with the addition of subpart (ii) in 2014, consistent statements that rebut other attacks on a witness—for example, "charges of inconsistency or faulty memory"—may be received as substantive evidence. Id. Accordingly, many courts have admitted prior statements made by child witnesses to rehabilitate those witnesses after attacks on cross-examination related to the witnesses' memory and the consistency of their statements. See, e.g., United States v. J.A.S., Jr., 862 F.3d 543 (6th Cir. 2017); United States v. Cox, 871 F.3d 479, 487 (6th Cir. 2017).

The Court finds that prior statements such as those that the Government intends to present are generally admissible under Rule 801(d)(1)(B)(ii). The Court nonetheless defers ruling unless and until such time as the defendant attacks the testimony of the child witnesses on grounds of faulty memory and inconsistency. At that time, the Court will be in a better position to determine whether the prior statements are sufficiently consistent with the witnesses' testimony at trial.

## III. ACCOMMODATIONS FOR CHILD WITNESSES

Lastly, the Government requests accommodations for the child witnesses in this case. At the time of trial, M.D. and D.D. will both be 11 years old. The Government requests that the child

witnesses be given an age-appropriate oath and be permitted to have a comfort object during testimony. The Court finds that these accommodations are reasonable and permissible.

Federal Rule of Evidence 603 requires a witness to "give an oath or affirmation to testify truthfully," and requires that the oath "be in a form designed to impress that duty on the witness's conscience." Fed. R. Evid. 603. The Notes of the Advisory Committee specify that "[t]he rule is designed to afford the flexibility required in dealing with . . . children. Affirmation is simply a solemn undertaking to tell the truth; no special verbal formula is required." Fed. R. Evid. 603, 1972 Advisory Committee Notes. "Flexibility in the oath or affirmation requirement is often warranted for child witnesses who might be hard-pressed to understand a formal oath or affirmation." United States v. Faison, No. ACM 37464, 2010 WL 2265833, at *3 (A.F. Ct. Crim. App. Apr. 19, 2010) (citations omitted).

Accordingly, before M.D. and D.D. testify, the Court will ask them a series of questions to establish that they appreciate the difference between truth and falsehood, they understand that lying is wrong and has consequences, and they promise to tell the truth. See United States v. Lamere, 337 F. App'x 669, 671 (9th Cir. 2009); United States v. Thai, 29 F.3d 785, 811–12 (2d Cir. 1994); Spigarolo v. Meachum, 934 F.2d 19, 24 (2d Cir. 1991).

The Government's request to allow M.D. and D.D. to use a comfort object while testifying is also reasonable. Federal Rule of Evidence 611(a) confers broad discretion on this Court in controlling "the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." "As long as the defendant's constitutional rights are safeguarded in a criminal proceeding, a judge is afforded wide discretion in fashioning procedures and modifying standard trial practices . . . . One such accommodation is allowing the

[child] witness to testify while holding a doll, stuffed animal, toy, or other comforting or stress-relieving item." Propriety of Allowing Witness to Hold Stuffed Animal, Doll, Toy or Other Comfort Item During Testimony, 82 A.L.R. 6th 373 § 2 (2013).

The Court finds that the use of small foam stress relief balls would cause minimal distraction to the jury, if any, and would not prejudice the Defendant. The Court will therefore permit M.D. and D.D. to hold such stress balls while testifying.

## IV. <u>CONCLUSION</u>

The Court has carefully reviewed the entire record, the parties' filings, and the relevant legal authority. For the reasons above, the Government's fourth motion in limine (Doc. No. 80) is **GRANTED**. The Government is permitted to question M.B. and Bercier about M.D.'s disclosures for the limited purpose of explaining the origin of the law enforcement investigation into Counts. The Court **DEFERS RULING** on the Government's fifth motion in limine (Doc. No. 81). The Court will address the admissibility of M.D. and D.D.'s prior statements if and when either potential situation arises. Lastly, the Government's sixth motion in limine (Doc. No. 82) is **GRANTED**. The Court will provide an age-appropriate oath to the child witnesses, and they will be permitted to hold small foam stress relief balls as they testify.

**IT IS SO ORDERED**.

Dated this 7th day of February, 2020.

<i>/s/ Peter D. Welte</i><br>
Peter D. Welte, Chief Judge<br>
United States District Court