## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 3:18-CR-141 |
| | ) | |
| vs. | ) | **DEFENDANT ROGER RICKY** |
| | ) | **COUNTS' SENTENCING** |
| Roger Ricky Counts, | ) | **MEMORANDUM** |
| Defendant. | ) | |

Defendant, Roger Ricky Counts, by and through his attorney, Alexander Reichert, submits this memorandum to address issues pertinent to sentencing in his case.

## LAW GOVERNING SENTENCING

Sentencing Guidelines

[¶ 1]   On January 12, 2005, the United States Supreme Court held that the mandatory application of the United States Sentencing Guidelines violated the Sixth Amendment to the United States Constitution. *See* United States v. Booker, 125 S. Ct. 738, 75-57 (2005). Under Booker, a defendant's constitutional rights are not violated when the Court considers the guidelines in an advisory basis, as opposed to being strictly bound by the guidelines. As a result, sentencing courts must calculate and consider the applicable guidelines range as one factor in determining the appropriate sentence. Id.

[¶ 2]   In United States v. Rita, 127 S. Ct. 2456 (2007), the Supreme Court examined the process used by the District Court during sentencing. The Court noted:

> The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, … perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. Thus, the sentencing court subjects the defendant's sentence to the

      thorough adversarial testing contemplated by federal sentencing procedure. In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal resumption that the Guidelines sentence should apply.

Rita, 127 S. Ct. at 2456 (internal citations omitted.)

[¶ 3]    Therefore, as the Court noted in Rita, this Court should engage in an analysis to determine any warranted departure from the guidelines. This Court must determine a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." The District Court need not apply a presumption of reasonableness to the listed guidelines amount, but instead "must … consider every convicted person as an individual and every case as a individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Id. at 364 (Stevens, J., concurring) (quoting Koon v. United States, 518 U.S. 81, 113 (1996)).

## STATEMENT OF FACTS

[¶ 4]    On August 15, 2018, a three-count indictment was filed in U.S. District Court, District of North Dakota, charging Mr. Counts with Aggravated Sexual Abuse of a Child, Tampering with a Witness, and Failure to Report Child Abuse. Prior to trial, the Government dismissed counts two and three, and a jury trial commenced on February 10, 2020. Following a trial, Mr. Counts was found guilty of Aggravated Sexual Abuse of a Child in violation of 18 U.S.C. § 2241(c) and 18 U.S.C. § 1153. Sentencing is currently scheduled for February 17, 2021.

## LAW AND ARGUMENT

    I.    **18 U.S.C. § 1153 applied to Mr. Counts, is unconstitutional as it violates the due process clause and is violate of equal protection guaranteed by the United States Constitution as it is based upon impermissible racial classification which results in a significant disparate impact at sentencing.**

        a.  **18 U.S.C. §1153 is racially based and is not narrowly tailored to further a compelling government interest.**

[¶ 5]   Title 18, United States Code, Section 1153(a), also known as the Major Crimes Act grants the Federal Government exclusive jurisdiction over enumerated crimes committed in "Indian Country" by "Indians"[1]. Mr. Counts was prosecuted in federal court based solely upon his status as a Native American committing an enumerated offense in "Indian Country", not his status as an enrolled member of a Native American tribe. This distinction is especially important, as it was not Mr. Counts' status as an enrolled member of a tribe which subjected him to federal jurisdiction. Cf. United States v. Antelope, 430 U.S. 641 (1977) ("[R]espondents were not subjected to federal criminal jurisdiction because they are of the Indian race but because they are enrolled members of the Coeur d'Alene Tribe."). However, even if Mr. Counts were prosecuted because of his enrolled status rather than his status as a Native American, Antelope has no place in United States criminal law and must be overruled. As of the state of the law, Antelope reinforced Morton v. Mancari, that statutes dealing with tribes are subject to a lesser degree of scrutiny than strict race-based classifications, as it is not "Indians" being treated as a discrete racial group, but as members of a tribal entity. See 417 U.S. 535 (1974).

[¶ 6]   In Antelope, three enrolled Coeur d'Alene members broke into the home of an 81-year-old non-Indian. 430 U.S. at 642. They robbed and killed the woman. Id. Because the crimes were committed by enrolled members within the boundaries of the Coeur d'Alene Indian Reservation, they were subject to federal jurisdiction under the Major Crimes Act. Id. Each individual was convicted of one or more crimes for which he was indicted. Id. The Ninth Circuit Court of Appeals reversed the convictions concluding the three were "put at a serious racially-based disadvantage" and thus violated equal protection requirements implicit in the Due Process

---

[1] The terms "Indian" and "Native American" are used interchangeably when appropriate.

Clause of the Fifth Amendment.  Id. at 644.  The United States Supreme Court grated certiorari.  U.S. v. Antelope, 424 U.S. 907 (1976).

[¶ 7]   The Supreme Court reversed the Ninth Circuit, largely focusing on federal legislation with respect to Indian tribes.  Antelope, 430 U.S. at 645.  "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory."  Id.  It further stated, "[S]uch regulation is rooted in the unique status of Indians as "a separate people" with their own political institutions.  Federal regulation of Indian tribes, therefore, is governance of once-sovereign political communities; it is not viewed as legislation of a " 'racial' group consisting of 'Indians' . . . ."  Id. (quoting Morton, *supra*, at 553 n. 24).  The holding was based upon respondents' status as enrolled members of a tribe, rather than their status as Native Americans.

[¶ 8]   However, assuming Mr. Counts was prosecuted based upon his affiliation with a Native American tribe, the reasoning in Antelope is outdated with the current views towards self-governance in tribal communities and must be overruled.  Originally, the Major Crimes Act was largely enacted in order to assimilate Native Americans into American society, see 16 Cong. Rec. 933, 936 (1885), in which one Member of Congress indicated that he believed that the Indians "will be civilized a great deal sooner by being put under such laws and taught to regard life and the personal property of others."  In an era of allotment and assimilation, the Major Crimes Act made sense.  However, the government has now moved more towards a self-governance approach in almost every aspect except criminal justice.  See, e.g., Tribal Self-Governance Act of 1994 (recognizing a right to self-government arising from the inherent sovereignty of tribes and calling for government-to-government relations with tribal government).  The shift in policy towards Native American tribes to a "government-to-government relationship" calls for a shift in the law

shaping exclusive federal jurisdiction over "tribes" rather than "Indians" as that found in the Antelope holding.

[¶ 9] Subjecting Mr. Counts to exclusive federal jurisdiction based upon his status as a Native American violates due process. Due process and equal protection have long been bedrocks within the Constitution. "As long ago as 1896, this Court declared the principle 'that the constitution of the United States . . . forbids . . . discrimination by the general government . . . against any citizen because of his race.'" Bolling v Sharpe, 347 U.S. 497, 499 (1954) (quoting Gibson v. Mississippi, 162 U.S. 565, 591 (1896). The Fifth Amendment does not contain an equal protection clause, but the concept of equal protection and due process, both stem from an idea of fairness and are not mutually exclusive. And, although the Fifth Amendment does not contain an equal protection clause, it does forbid discrimination that is violative of due process. Jimenez v. Weinberger, 417 U.S. 628 (1974). Discrimination may be so unjustifiable as to be violative of due process. Detroit Bank v. United States, 317 U.S. 329, 337 (1943). Classifications based solely upon race must be scrutinized with particular care, since they are contrary to the traditions and are constitutionally suspect. See Korematsu v. United States, 323 U.S. 214 (1944) (abrogated on other grounds by Trump v. Hawaii, 138 S.Ct. 2392 (2018); see also Grutter v. Bollinger, 439 U.S. 306 (2003) (all racial classifications imposed by government "must be analyzed by a reviewing court under strict scrutiny").

[¶ 10] The essential question presented in this case is whether criminal jurisdiction, and more importantly, the thirty-year mandatory minimum sentence, and lifetime guidelines sentence, as applied to Mr. Counts is acquired through a statute based on racial classification. From the face of section 1153, it undoubtedly does. Testimony elicited regarding Mr. Counts quantum of Native American blood at the trial confirms this contention. Further support of this proposition is found

in United States v. Ives, 504 F.2d 935 (9th Cir. 1974). In Ives, a defendant was convicted of murdering a non-Indian on an Indian reservation, triggering federal jurisdiction under section 1153. Ives challenged the federal court's jurisdiction because he contended the government did not prove he was an Indian. Id. at 953. Ives had requested his name be removed from the rolls of the Tribe in 1969, but it was not done. Id. Importantly, the Ninth Circuit determined "enrollment or lack thereof is not determinative of Ives' status as an Indian." Id. Therefore, **enrollment** in a tribe has no bearing on an individual's status as an "Indian" triggering federal jurisdiction. Only one conclusion, then, can be drawn—the statute is solely based upon a defendant's race as a Native American.

[¶ 11] 18 U.S.C. § 1153 treats specific individuals, Native Americans, differently based upon race. To allow a racial classification statute to stand, the government must show compelling interest in the classification that is narrowly tailored to further that interest. Johnson v. California, 543 U.S. 499, 505 (2005). The United States Supreme Court has insisted on strict scrutiny in every context, even for "benign" racial classifications, such as race-conscious university admission policies, (see Grutter v. Bollinger, 539 U.S. 306, 326 (2003)), race-based preferences in government contracts, (see Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 226 (1995), and race-based districting intended to improve minority representation, (see Shaw v. Reno, 509 U.S. 630, 650 (1993)). Why then, should section 1153 be analyzed under any other level of scrutiny? Strict scrutiny is applied to **all** racial classifications to ferret out illegitimate uses of race by assuring the government is pursuing a goal important enough to warrant use of a highly suspect tool. Johnson, 543 U.S. at 506.

[¶ 12] The Government may argue that the plenary power of Congress over Native Americans is a compelling government interest. Indeed, it may be. However, the classification as

to what constitutes "Indian Country" is not narrowly tailored to further such an interest. Indian Country is defined by statute. See 18 U.S.C. § 1151. It does not reference land solely based on a reservation but extends such jurisdiction to "all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof" and "all Indian allotments, the Indian titles to which have not been extinguished". No other federal enclave encompasses significantly greater area than necessary to achieve the government's interest. For example, it couldn't be argued that any land surrounding a military base would be subject to exclusive federal jurisdiction so it shouldn't be argued that "Dependent Indian communities" outside the boundaries of a reservation should be subject to exclusive federal jurisdiction. Simply put, a "Dependent Indian community" which has nothing to do with an Indian reservation, comes under federal jurisdiction based solely upon the race of those who inhabit them and their proximity to Native American reservations.

[¶ 13] Prior to the Civil Rights Act of 1964, colleges and universities were established with the intention of primarily serving the African-American community. These colleges and universities are now known as Historically Black Colleges and Universities (HBCU's). Imagine Congress passed a law which granted the federal government exclusive jurisdiction for major crimes committed by African Americans on these university campuses and any land associated with the campuses. The penalties associated with such crimes had significantly higher penalties than the state in which the colleges were located. A non-African American individual committing the crime is only subject to state criminal jurisdiction. It would not be a stretch to find such a statute unconstitutional because it singles out one race and subjects that race to harsher penalties. This exact situation arises under section 1153, but instead of African Americans, its Native Americans, and instead of HBCU's it's Indian Reservations and "Dependent Indian

Communities."  The two should not and cannot be viewed differently.  If one law would be unconstitutional, so then, should the other.

### b. 18 U.S.C. 2241(c) has an unconstitutionally disparate impact on Native American Defendants.

[¶ 14]  Mr. Counts being subject to federal jurisdiction solely based upon his race results in a significant disparate sentence than that of his non-Native peers.  A seemingly neutral law that has a disproportionally adverse impact upon a racial minority is unconstitutional under the Equal Protection Clause if that impact can be traced to a discriminatory purpose.  Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 272 (1979).  Subjecting those convicted of 18 U.S.C. § 2241(c) to a thirty-year mandatory minimum is seemingly neutral.  However, statistically, the majority of individuals subjected to such a harsh mandatory minimum tend to be Native American.  In Fiscal Year 2019, there were 1,165 sexual abuse offenses.[2]  Of those 1,165, 521 cases involved the production of child pornography (USSG §2G2.1), 376 involved traveling for prohibited sexual conduct (USSG §2G1.3), 136 involved rape (USSG §2A3.1); 44 involved abusive sexual contact (USSG §2A3.4), 40 involved statutory rape (USSG §2A3.2); and 48 involved criminal sexual abuse of a ward, promoting a commercial sex act with a minor, or child exploitation enterprises.  Of the 136 cases involving USSG §2A3.1, 79 cases were Native American defendants—over 58%.  Almost 80% of cases involving abusive sexual contact were Native American defendants, and 80% of cases involving statutory rape were Native American Defendants.

[¶ 15]  As shown, statistically, Native American defendants are significantly more likely to be subjected to mandatory minimum sentences under the Adam Walsh Act than their non-Native counterparts.  When the Adam Walsh Act was implemented, there were justifiable concerns that

---

[2] *Quick Facts – Sexual Abuse Offenders* – United States Sentencing Commission Report.  Available at https://www.ussc.gov/research/quick-facts/sexual-abuse

the creation of mandatory minimum sentences with sexual abuse cases would have a disparate impact on Native Americans.  See Children's Safety Act of 2005, H.R. Rep. 109-218 (1), (2005).[3] These concerns were completely ignored under the guise of "protecting the children."  Congress' lack of action in addressing the concerns involving Native Americans can only be characterized as discrimination.  Congress' stated purpose for enacting the Adam Walsh Act, as outlined in U.S. v. DeMarce, 564 F.3d 989, 1000 (8th Cir. 2009), was allegedly to "[P]rotect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims."  The debate on the bill simply doesn't support Congress' stated intent.  Congress knew it would disparately impact Native Americans at sentencing yet failed to act to alleviate that impact.  It, therefore, violates the Constitution to subject Mr. Counts to a thirty-year mandatory minimum sentence.

**II.     Mr. Counts proposed mandatory minimum sentence violates the Eighth Amendment to the United States Constitution.**

[¶ 16]  The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to "'the evolving standards of decency that mark the progress of a maturing society.'"  Graham v. Florida, 560 U.S. 48, 58 (2010) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976).  This is because the standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment.  "The standard itself remains the same, but its applicability must change as the basic mores of society change."  Id.

[¶ 17]  A significant portion of court precedents consider punishments challenged not as inherently barbaric, such as torture, but as disproportionate to the crime.  See Id. at 59.  The concept

---

[3] Available at https://www.congress.gov/congressional-report/109th-congress/house-report/218/1

of proportionality is central to the Eighth Amendment and embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to the offense." Weems v. United States, 218 U.S. 349, 367 (1910). Because applicability must change as the basic mores of society change, sentencing Mr. Counts to a mandatory minimum thirty-year imprisonment term is cruel and unusual.

[¶ 18]  As early as 1991, the United States Sentencing Commission explained that "the most efficient and effective way for Congress to exercise its powers to direct sentencing policy is through the established process of sentencing guidelines, permitting the sophistication of the guidelines structure to work, rather than through mandatory minimums."[4]  More recently, in 2011, the Commission issued its comprehensive 2011 Report to Congress wherein mandatory minimums were largely disfavored.  However, where Congress chose to exercise its authority over sentencing in enacting mandatory minimums, the Commission concluded such penalties should (1) not be excessively severe, (2) be narrowly tailored to apply only to those offenders who warrant such punishment, and (3) be applied consistently.[5]  In essence, the punishment should fit the crime and the person.

[¶ 19]  Mandatory minimums are becoming more and more disfavored, a change in the social mores of society.  A quick google search reveals an increasing number of states introducing and passing bills to eliminate mandatory minimum sentences.  If more and more states are eliminating mandatory minimum sentences in their respective states, it certainly stands to reason, then, that society is realizing mandatory minimum sentences are both cruel and unusual.  The

---

[4] U.S. Sentencing Comm'n, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System
[5] An Overview of Mandatory Minimum Penalties in the Federal Criminal Justice System. Available at https://www.ussc.gov/research/research-reports/2017-overview-mandatory-minimum-penalties-federal-criminal-justice-system.

"evolving standards of decency that mark the progress of a maturing society" point to mandatory sentences be violative of the Eighth Amendment, regardless of what courts have held in the past.

[¶ 20]  If the punishment should fit the crime and the person, then subjecting Mr. Counts to a thirty-year mandatory minimum is cruel and unusual.  Mr. Counts is a 52-year-old Native American male with almost no criminal history, resulting in a Category 1 criminal history score.  His only prior criminal conviction in federal, state, or tribal court arose in 2004, when Mr. Counts issued a check without sufficient funds to cover.  His presentence investigation report reports no other criminal conduct, pending charges, or arrests.  Mr. Counts has lived a law-abiding life for 52 years.  He maintains a good relationship with all his family members, he had a good job until the allegations giving rise to this conviction surfaced, and he has undoubtedly been a productive member of society and his tribal community.  If the punishment must fit the crime and the person, then a minimum thirty years of imprisonment is excessive.  A minimum thirty-year sentence must be reserved for those who can not be a contributing member of society.  A minimum thirty-year sentence must be reserved for those who have shown time and time again they cannot follow the law.  A minimum thirty-year sentence should not be given to a 52-year-old male with next to no criminal history.  A minimum thirty-year sentence should not be given to a 52-year-old male who has dedicated most of his life to serving his community.  A minimum thirty-year sentence, in this case, is cruel and unusual.  It violates the Eighth Amendment to the United States Constitution and must not be imposed.

## **CONCLUSION**

[¶ 21]  For the reasons stated herein, Roger Ricky Counts, respectfully requests this Court find 18 U.S.C. § 1153 unconstitutional as it applies to this charge.  Mr. Counts respectfully requests this Court find 18 U.S.C. § 2241(c) unconstitutional as applied to Mr. Counts.  He

respectfully requests that if a sentence must be imposed, that this Court find 18 U.S.C. 2241(c) mandating a minimum thirty-year sentence unconstitutional and sentence him to any term which the Court deems sufficient, but not greater than necessary to achieve the goals of sentencing.

Dated this 10th day of February, 2021.

**REICHERT LAW OFFICE**

/s/Alexander F. Reichert

_____

**ALEXANDER F. REICHERT**
**(ND ID #05446)**
118 Belmont Road
Grand Forks, ND 58201
Telephone No. (701) 787-8802
supportstaff@reichertlaw.com
Attorney for Defendant