IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROGER RICKY COUNTS,<br><br>Defendant. | Case No. 3:18-cr-00141<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

The United States of America, by Drew H. Wrigley, United States Attorney for the District of North Dakota, and Matthew D. Greenley, Assistant United States Attorney, and Sarah E. Edwards, Trial Attorney, Criminal Division, Department of Justice, hereby respectfully submit the United States' Sentencing Memorandum in the above captioned case.

The United States' urges the Court to commit the Defendant to the custody of the Bureau of Prisons for a term of life, which is the Defendant's guideline sentence under the United States Sentencing Guidelines (2018) as well as a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in Title 18, United States Code, Section 3553(a).

## I.     BACKGROUND

The Defendant, Roger Ricky Counts, was charged by indictment on or about August 15, 2018. The indictment alleged a violation of Aggravated Sexual Abuse of a Child in violation of Title 18, United States Code, Sections 2241(c) and 1153. Two other counts were dismissed prior to trial. The Defendant was arrested on August 16, 2018,

and he was released on pre-trial supervision on August 21, 2018.  Trial commenced on February 10, 2020, and the jury returned a guilty verdict on February 14, 2020. (Doc. No. 105).  The defendant was remanded into custody following trial, and the Court ordered a pre-sentence investigation report.  Sentencing was originally set for June 22, 2020, but sentencing has been continued three times on the Defendant's motions.  (Doc. No. 106).  Sentencing is currently set for February 17, 2021.

## II.     FACTS

The Court sat through a week-long trial in which M.D. testified about repeated sexual abuse committed by the Defendant.  The Defendant was a foster parent to M.D. and two other young boys during the timeframe identified in the Indictment.  Both of those boys testified: D.D. and B.G.  D.D. corroborated some of the early grooming and testing type behavior by the Defendant and his disclosures about that behavior.  Individuals who heard the disclosures by M.D. and D.D. testified, including one of M.D.'s teachers, two shelter care employees, M.D.'s psychologist, and M.D.'s older brother.  The forensic interviewer, Bonnie Fries, testified, as well as an expert in the grooming process used by sexual offenders.  And SA Scott Snyder testified about his interview of the Defendant in which the Defendant told SA Snyder that M.D. had seen the Defendant masturbating on two to three occasions.

M.D. is a sports-loving boy who grew up on and near the Turtle Mountain Indian Reservation in North Dakota.  M.D. turned eight years old in November 2016 while living with the Defendant, and he was eleven years old at the time he testified in trial.  The abuse of M.D. started shortly after he turned eight years old.

M.D. was placed in the Defendant's foster care in approximately May 2016 until early June 2017. During the period of time in the Defendant's custody, M.D. testified that the Defendant would "rub his privates" on M.D.'s face in moments when M.D. was alone with the Defendant. M.D. said the abuse occurred numerous times, and during the abuse the Defendant would physically hold down M.D., forcibly remove M.D.'s clothing, and aggressively rub his penis on M.D. M.D. explained that he would desperately try to move his head to avoid the Defendant's penis—"everywhere I turned he went"—and that the Defendant was so determined that he bruised M.D.'s lips while pressing his penis against M.D.'s face. M.D. testified that the Defendant even offered M.D. a "big toy" if M.D. would put the Defendant's penis in his mouth.

M.D. described other forms of abuse. M.D. described an occasion when the Defendant walked by M.D. and another foster child, D.D., with the Defendant's penis exposed. The Defendant told M.D. that if he told anyone, he would have to go to shelter care, which M.D. wished to avoid. Not only was M.D. in the Defendant's care at the Defendant's home, but the Defendant worked at Dunseith Day School where M.D. was enrolled.

It was not until M.D. moved out of the Defendant's home that he reported what the Defendant had been doing to him for months. In fact, M.D. reported the abuse to his older brother almost immediately upon being put in his aunt's care.

### III. SENTENCING RECOMMENDATION

The undersigned recommend the Court sentence the Defendant to commitment to the Bureau of Prisons for a term of life, consistent with the Pre-Sentence Investigation

Report (Hereinafter "PSIR" Doc. No. 115), the Defendant's applicable Guideline, and all of the factors identified in 18 U.S.C., § 3553(a).

District courts begin all sentencing proceedings by correctly calculating the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 49 (2007). The United States Sentencing Guidelines are the starting point and initial benchmark. Id. Courts may not assume the Guidelines range is reasonable, but must make an individualized assessment based on the facts presented. Id. at 50. Courts must then consider all of the factors in 18 U.S.C. § 3553(a) and adequately explain the chosen sentence to allow for appellate review. Id. See also United States v. McGrew, 846 F.3d 277, 280 (8th Cir. 2017) ("The Guidelines are a "starting point" for a potential sentence, followed by the application of the factors found in 18 U.S.C. § 3553(a) to determine whether the sentencing range is appropriate.").

### A. Guidelines Calculation

The Defendant was convicted of a violation of Title 18, United States Code, Section 2241(c), aggravated sexual abuse, to wit: engaging in a sexual act with a person who has not attained the age of 12 years. The statute carries a penalty of 30 years to life. 18 U.S.C. § 2241(c).

The base offense level for the above violation is 38. USSG § 2A3.1(a)(1). The following upward adjustments are applicable.

Four levels are added because the Defendant used force against M.D. when perpetrating the crime. USSG § 2A3.1(b)(1). Specifically, M.D. described the

Defendant sitting on M.D., pinning his arms down, and forcibly rubbing his penis in M.D.'s face.  The Defendant's hand or penis caused bruises to M.D.'s lips.

Two levels are added because M.D. was in the custody, care of supervisory control of the Defendant.  USSG 2A3.1(b)(3).  The testimony at trial definitively established that M.D. was placed in foster care of the Defendant and the Defendant's wife.

Five levels are added under USSG § 4B1.5(b) because the Defendant engaged in a pattern of activity involving prohibited sexual conduct.  Section 4B1.5(b) applies when the Defendant's instant offense is a covered sex crime, neither § 4B1.1 nor § 4B1.5(a) apply, and the Defendant engaged in a pattern of activity involving prohibited sexual conduct.  A covered sex crime includes any offense under Title 18 Chapter 109A perpetrated against a minor, which includes the instant offense.  Likewise, prohibited sexual conduct includes offenses under Chapter 109A, and it is of no consequence that the pattern of activity occurred during the instant offense.  USSG § 4B1.5(b) n. 4.

The total offense level is 49, however, any total offense level in excess of 43 is treated as level 43.  USSG Ch. 5 Pt. A n.2.  The applicable Guideline is life regardless of the Defendant's criminal history.  USSG Ch. 5 Pt. A.

**B.  Section 3553(a) Factors**

A sentence of life is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).  The factors to be considered include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the

offense, promote respect for the law and provide just punishment (B) to afford adequate deterrence to criminal conduct (general deterrence) (C) to protect the public from further crimes of the defendant (specific deterrence) (D) to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the USSG; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution. 18 U.S.C. § 3553(a).

**(1) The Nature and Circumstances of the Offense**

As noted by the PSIR, the Defendant has practically no criminal history. (Doc. 115 at ¶¶ 26-27). Nonetheless, the instant offense is a heinous crime against children, and the associated penalties are rationally related to Congress' purpose of deterring sex offenders and protecting children. See United States v. Demarce, 564 F.3d 989, 1000 (8th Cir. 2009).

Several factors in this case combine to make the Defendant's actions more reprehensible than the typical defendant convicted of aggravated sexual abuse of a child. Not only was M.D. barely eight years old when the Defendant started to sexually abuse M.D., but he had just been removed from his family and placed with a stranger five months prior. In the Defendant's custody, M.D. was separated from his otherwise large family, and had little personal or phone contact with his parents or the aunts M.D. lived with at times. The Defendant started to make sexual type advances toward M.D., such as

flashing, by November 2016 at the latest.[1]  The Defendant appeared willing to make the same advances to both M.D. and D.D., who necessarily avoided the same abuse as M.D. because D.D. was removed from the Counts' custody on November 16th.

The Defendant was legally responsible for M.D., but instead of providing safety and security, the Defendant punished M.D. severely for perceived misbehavior, and the Defendant threatened to send M.D. to shelter care if M.D. reported the Defendant's continued abuse.  M.D. may have also been reluctant to report the abuse at school because the Defendant worked at the school M.D. attended.[2]  Thus, M.D. was under the Defendant's authority all day every day.

This was a continuing offense that seemed to M.D. to happen "every day," and his actions demonstrated that he was literally powerless to stop the abuse, and must have felt he could not report it.  Only when M.D. was safely away from the Defendant did he immediately report what had been going on.

All of the aggravating factors accounted for in the United States Sentencing Guidelines equally support the same sentence under Section 3553(a): the victim's age, the Defendant's abuse of his position as a foster parent, the ongoing nature of the abuse and the Defendant's unwillingness to stop, and the forcible nature of the abuse.

**(2) The General Purposes of Sentencing**

---

[1] D.D., who witnessed the flashing, left the Counts' custody on November 16, 2016.
[2] Evidence of the Defendant's influence at the school was evident at trial when several teachers from Dunseith Day school testified in strong support of the Defendant and cast M.D. as a student with behavioral issues.

Any sentence that complies with the statutory mandatory minimum sentence in this case will adequately accomplish the goals of federal sentencing, especially with regard to respect for the law, just punishment, and protection of the public from further crimes of the defendant.

**(3) The Kinds of Sentences Available.**

The Defendant is ineligible for a sentence of probation or supervision both by operation of the United States Sentencing Guidelines as well as the applicable 30-year mandatory minimum sentence.

(4) **The Sentencing Guidelines**.

Even though the Guidelines are not mandatory, Section 3553(a) still requires courts to consider the kind of sentence and sentencing range established by the Guidelines. 18 U.S.C. § 3553(a)(4). The applicable Guideline range in this case (life) satisfies the statutory mandatory minimum sentence and also accounts for all of the aggravating conduct in this case. There is no tension between the Guideline and a sentence supported by Section 3553(a).

**(5) Any Relevant Policy Statement.**

General policy statements concern certain application of the guidelines and sentence implementation listed in 28 U.S.C. § 994(a)(2) that are not relevant here.

**(6) The Need to Avoid Unwarranted Sentence Disparities.**

The goal of Section 3553(a)(6) is to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a)(6).  "When a sentencing judge correctly calculates and carefully reviews the Guidelines range, he necessarily gives significant weight and consideration to the need to avoid unwarranted disparities."  United States v. Heim, 941 F.3d 338, 340 (8th Cir. 2019).   The disparities referred to in 18 U.S.C. § 3553(a) are disparities between similarly situated defendants convicted of the same federal offense.  Possible discrepancies "between state and federal sentences is a factor the Sentencing Commission considered but chose not to account for in the Guidelines."  United States v. Jeremiah, 446 F.3d 805, 807 (8th Cir. 2006).  In fact, district courts are not permitted under Section 3553(a)(6) to consider a potential federal/state disparity in imposing a sentence.  Id. at 808.

In this case, a sentence of life would be consistent with other federal defendants convicted of a violation of 18 U.S.C. § 2241(c) who engaged in a pattern of activity that involved prohibited sexual conduct by force, offended against a child in his care, and did not accept responsibility for his actions.  See, e.g., United States v. Free, 976 F.3d 810, 814 (8th Cir. 2020) (affirming district court's rejection of downward variance from life sentence); United States v. St. Claire, 831 F.3d 1039, 1041 (8th Cir. 2016)(affirming life sentence); United States v. Goodale, 738 F.3d 917, 920-21 (8th Cir. 2013) (affirming life sentence for a violation of 18 U.S.C. § 2241(c) arising from interstate transport of a minor); United States v. Decoteau, 630 F.3d 1091 (8th Cir. 2011) (30-year sentence); United States v. Rojas, 520 F.3d 876, 881 (8th Cir. 2008) (life sentence, but remanding for evidentiary hearing on issue of recantation); United States v. Plumman, 188 Fed.Appx. 529, 530 (8th Cir. 2006) (384 month sentence).

This factor supports a life sentence.

**(7) Need to Provide Restitution.**

Although the United States Attorney's Office has reached out to the victim and his family numerous times, there have been no requests for restitution in this case. Accordingly, this factor is not relevant.

In sum, the relevant factors above all support the Guideline sentence in this case.

### IV.     CONSTITUTIONALITY OF 18 U.S.C. §§ 1153 AND 2241(c)

**A. The Major Crimes Act Does Not Violate the Equal Protection Clause**

The Defendant asserts that the Major Crimes Act, 18 U.S.C. § 1153, violates the Equal Protection Clause of the 14th Amendment as incorporated in the 5th Amendment. The United States Supreme Court has already squarely addressed whether the Major Crimes Act violates the Equal Protection Clause, and ruled unequivocally that 18 U.S.C. § 1153 does not violate the Equal Protection Clause. United States v. Antelope, 430 U.S. 641, 647 (1977). There, the Supreme Court stated:

> The decisions of this Court leave no doubt that federal legislation with respect to Indian tribes, although relating to Indians as such, is not based upon impermissible racial classifications. Quite the contrary, classifications expressly singling out Indian tribes as subjects of legislation are expressly provided for in the Constitution and supported by the ensuing history of the Federal Government's relations with the Indians.

Antelope, 430 U.S. at 645 (citing Article I, section 8, U.S. Constitution giving Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes.")

10

The Supreme Court specifically rejected the Defendant's argument that laws regarding Native Americans are based on racial status:

> Literally every piece of legislation dealing with Indian tribes and reservations . . . single(s) out for special treatment a constituency of tribal Indians living on or near reservations.  If these laws . . . were deemed invidious racial discrimination, an entire Title of the United States Code (25 U.S.C.) would be effectively erased. . . .

Antelope, 430 U.S. at 645 (citing Morton v. Mancari, 417 U.S. 535, 552 (1974)).  The Supreme Court concluded that the Major Crimes Act does not apply to Native Americans as a racial group, but as members of quasi-sovereign tribal entities.  Id. at 646.  Tribes are political entities and not racial groups.  Mancari, 417 U.S. at 554.

The Defendant is dissatisfied with the state of the law and urges this Court to disregard binding Supreme Court precedent.  However, only the Supreme Court is able to overrule its own precedent.  See Rodriguez de Quijas v. Shearson/American Exp., 490 U.S. 477, 484 (1989) (Courts of Appeals must follow directly controlling precedent and leave it to the Supreme Court to overrule its own decisions).  Therefore, the Court must reject the Defendant's invitation to find the Major Crimes Act unconstitutional.

**B. The 30-Year Mandatory Minimum Sentence Under the Adam Walsh Act Does Not Violate the Equal Protection Clause.**

The Defendant asserts for the first time in his Sentencing Memorandum[3] that the thirty-year minimum mandatory sentence in the Adam Walsh Act[4] violates the equal protection clause of the 14th Amendment. Defendant's equal protection argument has been rejected by the Eighth Circuit and is without merit. United States v. DeMarce, 564 F.3d 989, 1000 (8th Cir. 2009).

DeMarce was convicted of attempted aggravated sexual abuse of a minor in the District of North Dakota and challenged the constitutionality of his 360-month sentence on the basis that federal sexual prosecutions have a disparate impact on Indians. Id. The Eighth Circuit flatly rejected the argument, holding that a sentence challenged on equal protection grounds need only pass the rational basis test. Id. The Eighth Circuit held that the penalties of the Adam Walsh Act serve its stated purpose of deterring sex offenders and that they penalties are rationally related to Congress' objective of protecting children. Id. (citing United States v. LeMay, 260 F.3d 1018, 1030 (9th Cir. 2001; United States v. McHorse, 179 F.3d 889, 897 (10th Cir. 1999)).

Because the Eighth Circuit has squarely considered, and rejected, the Defendant's Equal Protection argument, the Court should decline to find the Adam Walsh Act unconstitutional with respect to the thirty-year mandatory minimum sentence,

---

[3] One week prior to sentencing the Defendant raised two equal protection challenges. The Defendant may challenge the constitutionality of the statute of conviction even when, as happened here, the Defendant failed to preserve the issue in a pretrial motion to dismiss and failed to object at trial. United States v. Jennings, 930 F.3d 1024, 27 (8th Cir. 2019).
[4] Codified at 18 U.S.C. § 2241(c).

## C. The Thirty-Year Mandatory Minimum Sentence Codified at Title 18, United States Code, Section 2241(c) Does Not Violate the Eighth Amendment

Defendant's assertion that the thirty-year mandatory minimum applicable to him in this case violates the Eighth Amendment is similarly without merit. Congress has decided that defendants convicted of violating 18 U.S.C. § 2241(c) "shall be . . . imprisoned for not less than 30 years or for life." The Eighth Circuit has held that "a sentence within statutory limits is generally not subject to review under the Eighth Amendment." *United States v. Contreras*, 816 F.3d 502, 514 (8th Cir. 2016) (quoting *United States v. Rodriguez-Ramos*, 663 F.3d 356, 366 (8th Cir. 2011)).

The Eighth Amendment's prohibition on cruel and unusual punishment has been understood, in the context of sentencing, to forbid "extreme sentences that are 'grossly disproportionate' to the crime." *United States v. Scott*, 831 F.3d 1027, 1034 (8th Cir. 2016) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J. concurring in part and concurring in judgment)). Sexual abuse of children is some of the most damaging criminal conduct that there is. Thus, "[t]he thirty-year sentence required by § 2241(c) . . . does not lead to an inference of gross disproportionality." *United States v. Farley*, 607 F.3d 1294, 1344 (11th Cir. 2010); *see also United States v. Armstrong*, 808 Fed. App'x 418, 420 (9th Cir. 2020) ("Because sexual crimes involving children cause grave harm, [Defendant's] sentence is 'proportionate to the crime for which [he] has been convicted. The sentence is not cruel and unusual simply because it is 'mandatory.'") (citations omitted); *United States v. LaFond*, 692 Fed. App'x, 242, 245-46 (6th Cir. 2017)

13

("Defendant's thirty-year mandatory minimum sentence for violating 18 § 2241(c) is not constitutionally disproportionate.").

Accordingly, the mandatory minimum required by 18 U.S.C. § 2241(c) does not violate the Eighth Amendment. *See United States v. Parshall*, 600 Fed. App'x 485, 489 (8th Cir. 2015) (thirty-year mandatory minimum did not violate Eighth Amendment rights of first-time offender who had repeatedly sexually abused a six-year-old child); *see also LaFond*, 696 Fed. App'x at 245-248 (upholding mandatory minimum under 18 USC § 2241 where defendant with no prior criminal history); *United States v. Sandcrane*, 311 Fed. App'x 54, 56 (9th Cir. 2009) (upholding mandatory minimum under 18 USC § 2241 for first-time offender).

## V.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Defendant be sentenced to imprisonment for the remainder of his life.

Dated:  February 15, 2021

>
> DREW H. WRIGLEY
> United States Attorney
>
> By:   /s/ *Matthew D. Greenley*
> MATTHEW D. GREENLEY
> Assistant United States Attorney
> Quentin N. Burdick United States Courthouse
> 655 First Avenue North - Suite 250
> Fargo, ND  58102-4932
> (701) 297-7400
> MN Bar Board ID No. 034252X
> Matthew.Greenley@usdoj.gov

SARAH E. EDWARDS
Trial Attorney, Fraud Section
Criminal Division, Department of Justice
1400 New York Ave. NW
Washington, DC 20005
(202) 305-6761
Sarah.Edwards@usdoj.gov

Attorneys for United States.